**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------ X
UNITED STATES OF AMERICA       :

    -against-                :

                              :

STEVEN JUDE                  :       No. 15 Cr. 355 (JFK)

                              :

            <u>Defendant</u>.     :

                              :

------------------------------------ X
STEVEN JUDE                  :

                              :

           <u>Petitioner</u>,    :

                              :

    -against-                :

                              :       No. 17 Civ. 5246 (JFK)

UNITED STATES OF AMERICA       :

                              :      **OPINION & ORDER**

           <u>Respondent</u>.    :

------------------------------------ X

<u>APPEARANCES</u>

FOR THE UNITED STATES OF AMERICA
    Jessica Fender
    Jessica Lonergan
    U.S. ATTORNEY'S OFFICE (SDNY)

FOR STEVEN JUDE
    Pro se

**JOHN F. KEENAN, United States District Judge:**

    Before the Court are Defendant-Petitioner Steven Jude's ("Jude") motions to (1) vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and (2) amend his § 2255. For the reasons below, both motions are denied.

## I.    Background

On March 21, 2016, Jude pled guilty, pursuant to a plea agreement, to distributing and possessing with intent to distribute cocaine base in violation of 21 U.S.C. § 841(b)(1)(C). On January 31, 2017, the Court sentenced Jude to 72 months' imprisonment to run consecutively with any state sentence and to be followed by three years' supervised release. Jude did not appeal his conviction or sentence.

On July 11, 2017, Jude filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Jude argues that (1) he is not a career offender under the residual clause; (2) he was incompetent to stand trial and his counsel was ineffective for not obtaining a competency determination; (3) the Court knew he was incompetent and suffered from mental illness, but abused its discretion by failing to have him evaluated to determine his competency, not allowing the evaluation to go forward once it was ordered, and not permitting him to withdraw his plea; (4) "[t]he record is silent with respect to obtain[ing] [his] psychiatric records or hav[ing] [him] evaluated by a psychiatry[ist] for a competency determination"; and (5) his counsel was ineffective in failing to accommodate his visual impairment, failing to explain the pros and cons of accepting a plea, and failing to obtain a competency determination. (Mot. to Vacate at 1-2, ECF No. 52 in 15-cr-355 (filed July 11, 2017) [hereinafter "Mem."].)

On May 10, 2018, before the Court had ruled on his initial motion, Jude filed another § 2255 motion arguing that (1) his counsel was ineffective for incorrectly advising him that his state and federal sentences would run concurrently and (2) his guilty plea was involuntary, unknowing, and unintelligent because it was based on his attorney's promise that his state and federal sentences would run concurrently. (Mot. to Vacate at 7-10, ECF No. 58 in 15-cr-355 (filed May 10, 2018) [hereinafter "Am. Mot."].)

## II. Legal Standards

Because Jude is appearing pro se, the Court construes his submissions liberally and interprets them to raise the strongest arguments that they suggest. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases).

Pursuant to § 2255, a prisoner sentenced in federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if the prisoner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is only available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that

3

constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citations omitted).

### III. Discussion

### A. Jude's Initial § 2255 Motion

The Government argues that the terms of Jude's plea agreement foreclose his ability to make a § 2255 motion. (Mem. of L. in Opp. to Jude's Mot. to Vacate at 19, ECF No. 57 (filed Oct. 24, 2017) [hereinafter "Opp."].)

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (citing Tellado v. United States, 745 F.3d 48 (2d Cir. 2014); United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000)). "While plea agreements are to be applied narrowly and construed strictly against the government, exceptions to the presumption of the enforceability of the waiver" occupy a "very circumscribed" area of Second Circuit jurisprudence. Sanford, 841 F.3d at 580 (internal quotations and citations omitted). For instance, appellate and collateral attack waivers may be set aside when a defendant challenges "the constitutionality of the process by which he waived those rights." Khan v. United States, No. 07 Cr. 711 (LAP), 2014 WL 2111677, at *6-7 (S.D.N.Y. Apr.

4

28, 2014) (quoting United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001); Gomez-Perez, 215 F.3d at 319); see also Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195-96 (2d Cir. 2002). The Second Circuit has recognized such a constitutional challenge to waivers where (1) the waiver was not made knowingly, voluntarily, and competently; (2) the defendant claims that the plea agreement was entered into without effective assistance of counsel; (3) the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases; (4) the government breached the plea agreement; and (5) the sentencing court failed to enunciate any rationale for the defendant's sentence, amounting to an abdication of judicial responsibility subject to mandamus. See Hernandez, 242 F.3d at 113-14; Gomez-Perez, 215 F.3d at 319 (collecting cases).

Here, Jude's plea agreement states that it "is agreed (i) that defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under [28 U.S.C. §§ 2241 or 2255]; nor seek a sentence modification pursuant to [18 U.S.C. § 3582(c)], of any sentence within or below the Stipulated Guidelines Range of 151 to 188 months' imprisonment." (Plea Agmt. at 6, ECF No. 57-2 in 15-cr-355 (filed Oct. 24, 2017).) As the Court sentenced Jude to 72 months' imprisonment, this provision applies. Jude has,

however, made several arguments that challenge the constitutionality of the process by which he signed the plea agreement. The Court considers each in turn.

### 1. Knowingly, Voluntary & Competent Waiver of Rights

Throughout his submission, Jude makes what the Court interprets as an argument that his guilty plea is invalid because, at the time of his plea, he was incapable of understanding his plea agreement or assisting in his own defense due to his mental illness. (Mem. at 15-16, 18.)

Federal Rule of Criminal Procedure 11 is designed to assist a district court in determining whether a defendant's guilty plea conforms with the requirements of due process—that is, whether the plea is made knowingly and voluntarily. McCarthy v. United States, 394 U.S. 459, 465-66 (1969); United States v. Mercado, 349 F.3d 708, 711 (2d Cir. 2003). "But while Rule 11 imposes strict requirements on what information the district courts must convey and determine before they accept a plea, it does 'not . . . tell them precisely how to perform this important task in the great variety of cases that . . . come before them.'" United States v. Maher, 108 F.3d 1513, 1520-21 (2d Cir. 1997) (quoting United States v. Saft, 559 F.2d 1073, 1079 (2d Cir. 1977)); see also McCarthy, 394 U.S. at 467 n.20 (stating that the "nature of the inquiry required by Rule 11 must necessarily vary from case to case."). "What is essential,

however, is that the court determine by some means that the defendant actually understands the nature of the charges." United States v. Del Carpio, 63 F. App'x 539, 540 (2d Cir. 2003) (quoting Maher, 108 F.3d at 1521). Where, as here, there is an indication "that defendant is under the influence of any medication, drug, or intoxicant," the Second Circuit has found that a strict compliance with Rule 11 makes it "incumbent upon the district court to explore on the record defendant's ability to understand the nature and consequences of his decision to plead guilty." United States v. Rossillo, 853 F.2d 1062, 1066 (1988). Evidence of some degree of mental illness is, by itself, insufficient to establish a defendant's incompetency. United States v. Vamos, 797 F.2d 1146, 1150-51 (2d Cir. 1986) (citing Hall v. United States, 410 F.2d 653, 658 (4th Cir. 1969)). Finally, since a defendant's "counsel is well-positioned to know whether the defendant is able to participate in his own defense," their belief that defendant was competent to plead guilty provides "substantial evidence of the defendant's competence." Del Carpio, 63 F. App'x at 541 (quoting Vamos, 797 F.2d at 1150).

At Jude's March 21, 2016 plea hearing, the Court asked Jude the Rule 11 questions and the following exchange occurred:

THE COURT: Okay. And have you ever been under the care
of a doctor or a psychiatrist for mental or emotional
problems?

THE DEFENDANT: Yes.

THE COURT: And that was some while ago, right?

THE DEFENDANT: Yes.

THE COURT: And you don't have any question about his
ability to plead or his competency, do you, sir?

[Jude's attorney]: No, your Honor.

(Tr. at 11, ECF No. 27 in 15-cr-355 (filed Apr. 20, 2016)
[hereinafter "Mar. 21 Tr."].) On learning that Jude may have
not taken his psychotropic medication that day, the Court asked
Jude whether he had taken all the medication he needed. (Id. at
12.) Jude confirmed that he had. (Id.) The Court then, for a
second time, asked Jude's attorney whether there was any issue
about Jude's competency to plead. (Id.) His attorney again
confirmed that there was not. (Id.) The Court then confirmed
that Jude (1) felt he understood the charges in the indictment
and had discussed the indictment and plea agreement with his
attorney, (2) understood the ramifications of his plea
agreement, and (3) signed the plea agreement of his own free
will and not by any inducement. (Id. at 13-21.) The Court,
thus, conducted precisely the kind of inquiry that satisfies the
explicit requirements of Rule 11 and found Jude competent to

enter a plea. Del Carpio, 63 F. App'x at 540-41. Accordingly, the Court, finding no reason to reverse its earlier determination, again finds that Jude was mentally competent at the time of his plea.

## 2. Effective Assistance of Counsel

Jude next argues that his attorney was ineffective at the time of his guilty plea because his attorney failed to (1) obtain a competency determination, (2) accommodate his visual impairment during the plea agreement, (3) adequately explain the pros and cons of accepting a plea, and (4) obtain his psychiatric records. (Mem. at 16, 28.)

To allege a successful ineffective assistance of counsel claim, Jude must show that (1) his "counsel's performance was unreasonably deficient under prevailing professional standards" and (2) "but for counsel's unprofessional errors, there exists a reasonable probability that the result would have been different"—in this case, that Jude would not have pled guilty and would have gone to trial. United States v. Torres, 129 F.3d 710, 716 (1997) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984)); Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

As an initial matter, Jude had several different attorneys over the course of his case. He was jointly represented by Adam Perlmutter and Daniel McGuinness from the beginning of the case

until just after he pled guilty. Xavier Donaldson represented him for the remainder of his case including sentencing.

### a. Competency Determination

Jude's first argument is that his attorneys were ineffective when they failed to obtain a determination of his mental competency to stand trial. (Mem. at 16.)

This argument largely relies on Jude's repeated assertion that the Court ordered Jude's attorneys to have him evaluated by an expert to determine his competency. (Mem. at 14, 15, 21, 23 & 24.) Mr. Perlmutter then allegedly ordered such a mental examination, though neither he nor Donaldson followed through. (Id. at 20, 21, 23.) Despite this evidentially being Jude's— though not his attorney's—understanding of the facts at the time of his sentencing (Tr. at 5-6, ECF No. 50 in 15-cr-355 (filed Mar. 1, 2017) [hereinafter "Jan. 31 Tr."]), the Court can find no evidence that it ordered or that Jude's attorneys ever requested such an evaluation. Indeed, Mr. Perlmutter and Mr. Donaldson repeatedly assured the Court that was no question as to Jude competency. (Mar. 21 Tr. at 11-12; Jan. 31 Tr. at 6.) Instead, what appears to have happened is that Mr. Perlmutter requested a psychiatric evaluation, not to determine Jude's competency, but to make sure Jude was receiving appropriate treatment while incarcerated. (Jan. 31 Tr. at 6.) Since the Court never ordered that Jude be mentally evaluated to determine

10

his competency, Jude's attorneys' failure to execute and follow up on such an evaluation cannot be grounds for ineffective assistance of counsel.

Construing Jude's submission to make the strongest arguments it suggests, the Court next considers whether Jude's attorneys were ineffective for failing to request an mental evaluation as to his competency. The Court's above determination that Jude was competent at the time he pled guilty forecloses a finding that Jude's attorneys were unreasonably deficient in reaching the same conclusion. Del Carpio, 63 F. App'x at 541. Accordingly, Jude's argument fails.

### b. Visual Impairment Accommodations

Jude argues that his attorney was ineffective since, despite Jude's legal blindness, his attorney failed to make reasonable accommodations—such as "visual [aids] or Auxiliary Aids or magnifiers"—when his attorney had him sign his plea agreement. (Mem. at 14.)

As an initial matter, it is not clear to the Court that being provided with visual aids, auxiliary aids, or magnifiers would have helped Jude interpret his plea agreement since Jude has repeatedly asserted that he is illiterate. (Mem. at 15, 16, 32.) Even assuming, arguendo, that Jude is not illiterate and can only read with aids, he has failed to explain how his attorney's failure to accommodate his visual impairment rendered

his counsel's performance deficient under the prevailing professional standards. Finally, even if he had presented such an explanation, Jude's own allocutions under oath and in open court would undermine it. During his plea hearing, the Court asked Jude "Was the plea agreement explained to you and was it described to you and did you get a chance to read it?" (Mar. 21 Tr. at 16.) Jude answered "Yes." (Id.) The Court then asked Jude several questions to confirm that he understood the details of the plea agreement and Jude confirmed that he did. (Id. at 16-20.) Given that a solemn declaration in open court carries a strong presumption of veracity, a defendant's statements at a plea hearing "constitute a formidable barrier to any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); see also United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997) (same holding). Accordingly, for the reasons above and having no cause to doubt the veracity of Jude's statements at the time of his plea agreement, the Court rejects Jude's argument that his attorney was ineffective for failing to accommodate his legal blindness.

### c. Explaining the Pros & Cons of the Plea Agreement

Jude next argues that his counsel was ineffective because he failed to explain the pros and cons of accepting his plea agreement. (Mem. at 2, 16.) Jude's submission, however, lacks any detail addressing how this made his counsel unreasonably

deficient under prevailing professional standards, nor does it state that he would not have pled guilty and would have proceeded to trial had his counsel fully explained the pros and cons. Even if Jude had made such allegations, his own allocutions made under oath would undermine them. At Jude's plea hearing, the Court confirmed that Jude understood pleading guilty meant there would be no trial of any kind and what rights and benefits he was waiving by not proceeding to trial. (Mar. 21 Tr. at 13-16.) The Court also confirmed that Jude understood the various provisions of his plea agreement, understood the guidelines sentence, that he was satisfied with Mr. Perlmutter's representation, and that he signed the plea agreement of his own free will. (Id. at 16-21.) Given the strong presumption of veracity such statements are given (Blackledge, 431 U.S. at 73-74), this indicates to the Court that he fully understood the pros and cons of his plea agreement at the time he signed it. Accordingly, this argument that Jude's counsel was ineffective fails.

### d. Failure to Obtain his Psychiatric Records

Finally, Jude makes what the Court—construing Jude's pro se submission as making the strongest argument it suggests—interprets as an argument that his plea agreement was entered without effective assistance of counsel since Mr. Perlmutter failed to obtain his past psychiatric records. (Mem. at 27-34.)

For Jude's argument for ineffective assistance of counsel to succeed, Jude would have to prove that, had Mr. Perlmutter obtained these records, there exists a reasonable probability that his plea agreement would not have proceeded. Torres, 129 F.3d at 716. As far as the Court can interpret it, Jude's theory for how this would have happened appears to be that (1) Mr. Perlmutter would have introduced these records to the Court, (2) either via Mr. Perlmutter's request or the Court's own initiative, an expert would have been assigned to examine them, and (3) the expert would have concluded that Jude would not have agreed to the plea agreement absent coercion. (Mem. at 28, 32.)

The Court does not agree that this course of events would have been the inevitable result of Mr. Perlmutter obtaining these records. First, even assuming that Mr. Perlmutter never saw these medical records—which show that Jude had a history of auditory and visual hallucinations, a learning disability, and various psychological disorders (Mem. at 31-32)—the Court is unconvinced that had he received them, he would have felt compelled to request a medical evaluation of Jude's competency. Mr. Perlmutter—who was, evidentially, aware of some of Jude's past psychiatric history and his then ongoing psychiatric treatment—nevertheless twice confirmed at the plea hearing that there was no question as to Jude's competency. (Mar. 21 Tr. at 5, 11-12.) Further, Mr. Donaldson—who was clearly aware of

Jude's history with schizophrenia, manic depression, and bipolar disorder—confirmed at sentencing that there was no question as to Jude's competency. (Jude's Sent. Submission at 3, ECF No. 46 in 15-cr-355 (filed Jan. 22, 2017); Jan. 31 Tr. at 6.) Given that—as the Court has already observed—evidence of some degree of mental illness is, by itself, insufficient to establish a defendant's incompetency (Vamos, 797 F.2d at 1150-51), the Court is not convinced that these additional medical documents would have compelled Mr. Perlmutter to request a competency examination. Even if they had, however, Jude's theory still relies on the Court finding it inevitable that a medical professional would have made a certain, specific conclusion. The Court cannot and will not do so. Accordingly, Jude's argument that his counsel did not provide effective representation fails.

### 3. Additional Arguments

As the Court has now found that Jude agreed to the plea agreement knowingly, voluntarily, competently, and with effective assistance of counsel, Jude's waiver of § 2255 relief stands. Accordingly, the Court holds that Jude's additional arguments are waived by the terms of his plea agreement.

### B. Jude's Motion to Amend his § 2255 Motion

As previously mentioned, Jude filed an additional § 2255 motion while his first § 2255 motion was pending. Accordingly,

the Court construes his second § 2255 motion as a motion to amend the first. See Ching v. United States, 298 F.3d 174, 177 (2d Cir. 2002) ("[W]hen a § 2255 motion is filed before adjudication of an initial § 2255 motion is complete, the district court should construe the second § 2255 motion as a motion to amend the pending § 2255 motion.").

In such an instance, the decision to grant a motion to amend the original § 2255 motion is committed to the sound discretion of the district court which applies the standards of Federal Rule of Civil Procedure 15(a). Mercado v. Lempke, No. 07-cv-9865 (KMK)(PED), 2009 WL 2482127, at *5 (S.D.N.Y. Aug. 13, 2009) (citing Ching, 298 F.3d at 180); Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001) ("Given that motions to amend are not successive habeas petitions, the standard for granting or denying a motion to amend is thus governed by" Rule 15(a))). Under Rule 15(a), leave to amend is to "be freely given when justice so requires." Thompson v. United States, 16-cv-3468 (AJN), 2018 WL 327249, at *6 (S.D.N.Y. Jan. 3, 2018) (quoting Jones v. N.Y. State Div. of Military & Naval Affairs, 166 F.3d 45, 50 (2d Cir. 1999)). However, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-

moving party." Id. (quoting Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008)).

The Government argues that the Court should deny Jude's motion to amend as (1) it is untimely and, thus, futile and (2) it lacks merit. (Gov.'s Resp. at 4, 6, ECF No. 60 (filed May 3, 2019)).

### 1. Timeliness

The Government first argues that that Jude's motion to amend should be barred as futile because it was untimely and neither of the avenues through which it might be considered timely is applicable. (Id. at 6-8.)

28 U.S.C. § 2255(f) imposes a statute of limitations on § 2255 motions of one year from the latest of four different dates. Since Jude has not argued that any of the other three dates are applicable—and the Court does not find them to be—the only relevant date that triggers the running of the clock in this case is "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Where, as here, a petitioner did not file an appeal of his federal criminal judgment, the date on which that judgment becomes final is "when the time for filing a direct appeal expires." Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005). The judgment of conviction in this case was entered on January 31, 2017 (ECF No. 49 in 15-cr-355) meaning Jude's time to file a direct appeal

expired on February 14, 2017. Fed. R. App. P. 4(b)(1)(A). Jude,

thus, had until February 14, 2018 to file a timely response.

Jude's initial § 2255 motion, filed on July 11, 2017, was

timely. However, his motion to amend—which, confusingly, is

dated April 31, 2018—is presumptively not. This, however, does

not end the Court's inquiry as Jude's motion could still be

considered timely if (1) it relates back to any of the claims in

his original petition or (2) the Court grants a time extension.

Ching, 298 F.3d at 181; Green v. United States, 260 F.3d 78, 82–

83 (2d Cir. 2001).

### a. Relate Back Doctrine

Under Rule 15(c), an otherwise untimely amendment may,

nevertheless, be timely if it "relates back" to the original

habeas motion. Ching, 298 F.3d at 181. "An amendment to a

pleading relates back to the date of the original pleading when

the amendment asserts a claim or defense that arose out of the

conduct, transaction, or occurrence set out—or attempted to be

set out—in the original pleading." Fed. R. Civ. P. 15(c)(1). A

claim or defense does not, however, relate back "merely because

proposed claims concern the same trial, or the same events

presented or occurring therein, as existing claims." Soler v.

United States, No. 10 Civ. 4342 (RJH) (MHD), 2010 WL 5173858, at

*4 (S.D.N.Y. Dec. 20, 2010) (citing Mayle v. Felix, 545 U.S.

644, 662 (2005)); Reiter v. United States, 371 F. Supp. 2d 417,

423 (S.D.N.Y. 2005) ("[I]t is not sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original § 2255 motion"). Rather, "the claims added by amendment [must] arise from the same core facts as the timely filed claims, and not when the new claims depend on events separate both in time and type from the originally raised episodes." Mayle, 545 U.S. at 657.

Here, Jude's motion to amend seeks to add arguments that (1) his plea was involuntary, unknowing, and unintelligent since it was induced by his counsel's promise that his state and federal sentences would run concurrently and (2) his counsel was ineffective for advising him that his state and federal sentences would be concurrent and then failing to ensure that promise was carried out. (Am. Mot. at 3-6.) Jude's counsel's promise that his state and federal sentence would run concurrently was never mentioned and does not arise out the same "core facts" as any of the arguments in his original submission. Though Jude's original submission did allege that his plea was made involuntarily and unknowingly and that his counsel provided ineffective assistance, these similarities—without more—are insufficient for the claims to relate back. Ozsusamlar v. United States, Nos. 10-cv-6655 (KMW) (HBP), 02-cr-763 (KMW), 2013 WL 4623648, at *4 (S.D.N.Y. Aug. 29, 2013) (citing Veal v. United States, No. 01 Civ. 8033 (SCR), 2007 WL 3146925, at *5 (S.D.N.Y.

19

Oct. 9, 2007)). Accordingly, Jude's motion to amend does not relate back to his original submission and cannot be deemed "timely" on that basis.

### b. Time Extension

Though a district court may grant an extension of time to file a § 2255 motion, it may do so "only if (1) the moving party requests the extension upon or after filing an actual 2255 motion and (2) 'rare and exceptional' circumstances warrant equitably tolling the limitations period." Green, 260 F.3d at 82-83 (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)).

Here, Jude has not requested an extension, nor has he detailed any exceptional circumstances that would warrant one. Accordingly, the Court shall not grant an extension. Jude's motion to amend is, thus, untimely and the Court denies it as futile.

### 2. Merits

As the Court has denied Jude's motion to amend as futile, it declines to assess the motion on its merits.

### Conclusion

For the reasons stated above, Jude's motions to (1) vacate set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and (2) amend his § 2255 motion are both DENIED.

The Court declines to issue a certificate of appealability because Jude has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Krantz v. United States, 224 F.3d 125, 127 (2d Cir. 2000). Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully directed to terminate the motions docketed (1) in No. 15 Cr. 355 at ECF Nos. 52 and 58, and (2) in No. 17 Civ. 5246 at ECF No. 4. The Clerk of Court is further directed to close No. 17 Civ. 5246.

**SO ORDERED.**

Dated:     New York, New York
        August / , 2019

John F. Keenan
United States District Judge